## WALDRIP *v*. GRISHAM.

## Opinion delivered March 9, 1914.

1. . EVIDENCE—LEASE OF LANDS—OVERFLOW—EXTENT OF OVERFLOW.—Plaintiff leased lands to defendant, with a stipulation for a reduction in the rent of a certain sum per acre for lands overflowed. The parties disagreed as to the number of acres overflowed. *Held,* when plaintiff admitted that there had been an overflow, and evidence was introduced as to the acreage overflowed, it was competent for witnesses to testify that the overflow in question was larger than general overflows, in the absence of any testimony as to the extent of general overflows. (Page 59.)

2. EVIDENCE—OVERFLOWED CROPS—IDENTIFICATION—INCOMPETENCY.—Testimony of a witness as to the extent of overflow was properly excluded, where the witness did not identify the crop about which he was speaking. (Page 60.)

3. LANDLORD AND TENANT—AGREEMENT TO REPAIR.—By the terms of a lease a landlord agreed to keep the buildings and fences on the demised premises in reasonable repair. *Held,* when the tenant made certain repairs, before he can recover for same from the landlord he must show that the repairs were necessary, that the landlord failed to respond to a request to make the said repairs, or that the tenant reported the making of the repairs to the landlord or his agent, either of whom ratified the same, agreeing to pay therefor. (Page 61.)

4. TRIAL—ARGUMENT OF COUNSEL—REMOVAL OF PREJUDICE.—Where counsel for appellant objected to argument of opposing counsel, and the court admonished the jury to remember the evidence in the case. *Held,* the admonition of the court eliminated any prejudice that might have resulted from the argument. (Page 62.)

5. APPEAL AND ERROR—FAILURE OF TRIAL COURT TO MAKE A RULING.—A cause will not be reversed, when counsel objected to argument of opposing counsel, but the record fails to disclose that the trial court made any ruling on the point. (Page 63.)

Appeal from Independence Circuit Court; *R. E. Jef-fery,* Judge; affirmed.

*McCaleb & Reeder* and *Ernest Neill,* for appellant.

*Sam M. Casey* and *Oldfield & Cole,* for appellees.

HART, J. On the first day of January, 1908, Elizabeth F. Waldrip leased to W. E. Grisham her farm in Independence County, for the term of five years, at an annual rental of $1,375. The lease was reduced to writing and signed by the parties. The lessor bound herself to keep the building and fences on the premises in reasonable repair during the term of the lease. The lease further provided that in case of a general overflow of White River, whereby the crops on the low lands of said leased premises should be destroyed, the rent on the land so damaged should be deducted from the total annual rent at the rate of $4.75 per acre for the bottom land and $2.50 per acre for the upland. In 1911 some of the crops on the bottom lands were destroyed, in August, by an overflow from the White River. The landlord admitted that thirty-three and one-fourth acres of the bottom lands were overflowed from the White River and the crops thereon destroyed, and that her tenant was entitled to a deduction of the rent on said lands at the rate of $4.75 per acre, amounting to $159.93. The tenant paid the landlord as rent for that year $900. This suit was instituted by the landlord against her tenant to recover the balance of rent alleged to be due her and to enforce her landlord's lien therefor. The tenant, Grisham, claimed that the crop on 110 acres of bottom land was destroyed by that overflow and that he was entitled to a deduction in the rent for that amount of land at $4.75 per acre. He also claimed that the landlord was due him the sum of $80 for repairs made on the premises. There was also a provision in the lease that the lessee should clear and put in cultivation a certain number of acres of woodland each year, and in default thereof, or for failure to pay the rent, the lessor should have the right to terminate the lease and take possession of the premises. There was a trial before a jury, and it returned the following

verdict: "We, the jury, find for the defendant, W. E. Grisham." From the judgment rendered in favor of the defendant, Elizabeth F. Waldrip has duly prosecuted an appeal to this court.

It is first contended by counsel for plaintiff that the judgment should be reversed because the circuit court permitted certain witnesses to testify that the overflow in question was larger than general overflows. They claim this testimony was incompetent for the reason that there was no basis for comparison, no witness having testified to what extent the plaintiff's farm was subject to inundation during a general overflow. They insist that it was prejudicial for the reason that it was generally known in Independence County that in the time of a general overflow from White River sometimes whole farms are completely inundated. We do not think that the admission of the evidence was prejudicial to the rights of the plaintiff. It was admitted by the plaintiff that a certain portion of her bottom farm rented by the defendant was overflowed in August, 1911, by White River, and that a portion of the crops grown by the defendant was completely destroyed. The only dispute between the parties to this suit on this issue was as to the amount of land overflowed and the quantity of the crop that was destroyed by the overflow. Shortly after the overflow the plaintiff had persons to go into the overflowed portion of the land and measure that portion of it that was overflowed. These witnesses all testified at the trial as to the quantity of land that was overflowed, and amount of crops destroyed thereby. On the other hand, witnesses for the defendant examined the land and gave their estimate as to the quantity that was overflowed. Under these circumstances, there could have been no prejudice to plaintiff from the admitted testimony.

Shortly after the overflow, the son of the plaintiff, who was her agent in the matter of renting the land, rode over the overflowed portion of the land with the defendant and insisted that only the crops on about forty acres of the land had been destroyed by the overflow,

while the defendant claimed that the crops on 100 acres had been destroyed by the overflow. The plaintiff offered to prove that the defendant had admitted to her son that only 100 acres had been overflowed and the crops thereon destroyed, and the court refused to admit the testimony before the jury. It will be remembered that at the trial defendant testified that between 105 and 110 acres had been overflowed, and the crops thereon destroyed. It is not contended by counsel for plaintiff that the judgment should be reversed for this reason. Presumably the testimony was excluded because the court held that the admission was made in an effort to compromise the differences between the plaintiff and the defendant. In any event, the testimony was not prejudicial. It is admitted that the annual rent of the farm was $1,375 and that the defendant paid to the plaintiff $900 on the rent for the year 1911. If it be conceded that only the crop on 100 acres was destroyed by the overflow, the deduction to be made on that amount, at $4.75 per acre, would amount to $475, and this would have been a sufficient sum to have entitled the defendant to a verdict.

T. H. Dearing was a witness for the plaintiff, and was asked this question: "Do you remember whether there was a controversy over that piece of land, as to whether any of it was destroyed by overflow or not?" Answer: "Well, I do not recollect any controversy about the overflow, but my judgment was that it had not been cultivated." Here an objection made by the defendant was sustained by the court. It appears from the record that the question was asked the witness in reference to the crop of a Mr. Weaver, who was a subtenant of the defendant, Grisham. The court stated that the evidence was excluded because the witness had not sufficiently identified the crop about which he was speaking as being that raised by Weaver. He had already testified that he was not sure whether the crop pointed out to him was represented to be Weaver's or not. The plaintiff, under the circumstances, should have offered to identify the crop spoken of as being that raised by

Weaver, and then should have renewed the question to the witness. Not having done so, plaintiff is not now in an attitude to complain at the action of the court in excluding the testimony.

The plaintiff requested the court to instruct the jury as follows:

"You are instructed that before the defendant would be entitled to claim any credit for repairs in this action, it would be necessary for him to show by a preponderance of the evidence—

"*First.* That said repairs were necessary; and,

"*Second.* That he had informed plaintiff or her agent of same, and requested him to make them, and that after such request plaintiff had failed to or neglected to make same."

And the court refused to give said instruction, but modified the same by adding the following words thereto, viz:

"Or that said repairs were made at the instance of the defendant and afterwards reported to the plaintiff or her agent, and that said agent ratified the same and agreed to pay therefor."

It is now insisted by counsel for plaintiff that the court erred in the modification made by it to the instruction; but we do not agree with them in that contention. By the terms of the lease, the lessor bound herself to keep the buildings and fences on the demised premises in reasonable repair during the term of the lease. Will Waldrip, the son of the plaintiff, and her agent in regard to the lease, testified that he never authorized the repairs to be made; that they were not necessary to be made; and that he did not ratify the action of the tenant in making them and did not agree to pay for them after they had been made. On the other hand, the evidence on the part of the defendant tended to show that the repairs were necessary to keep the building and fences in reasonable repair and that the amount claimed was actually expended by the defendant in making said repairs and was a reasonable price therefor. The defendant himself

stated that when he went to settle for the rent of the land he told the agent of the plaintiff about the repairs and that the plaintiff's agent claimed that it was too high but said that he would see the subtenant, who made the repairs, about it; that the plaintiff's agent never made any complaint that the repairs were not necessary, but only said they were too high. Under these circumstances, the jury might have found that the plaintiff's agent agreed that the repairs were necessary and were such as were required to be made under the contract and that plaintiff was liable therefor in some amount.

It is next contended that the judgment should be reversed on account of the argument of one of the attorneys for the defendant before the jury. In regard to this, the record shows the following:

"Gentlemen of the jury, this is the truth about the matter. They (referring to plaintiff and her sons) rented this place to Bill Grisham when it was in a bad state of repairs—all run down, the fences burned up or probably fallen down—and they see that there is a chance to get more rent for it, and they start out with the sole purpose of driving him away from there. That is the secret of this suit—they are seeking to set aside this contract and declare it void, and thus get the rent on the land he has cleared; and not only that, but to gobble up all that Bill Grisham was supposed to get for all the work he has done on the land that he has cleared.'

"(Which was at the time objected to by plaintiff, and the court instructed the jury at the time that they would remember the evidence in the case.)

"And Mr. Neill, rising in court and objecting to the above statement, said: 'They are absolutely false,' and Mr. Cole remarked to Mr. Neill, in open court and in the presence and hearing of the jury, 'I know it is not false, Mr. Neill, and you know it, too.'

"(To all of which the plaintiff excepted.)"

In regard to the first part of the argument, it will be noted that the record shows that the court told the jury that they would remember the evidence in the case.

This was tantamount to telling them that their verdict should be based solely on the evidence introduced at the trial and that they should not consider any remarks made by counsel outside of the record. The jury must be credited with exercising the same common sense and judgment which they would exercise in the ordinary affairs of life, and we think that the remarks of the court must have eliminated from their minds any prejudice that might have resulted from the remarks of counsel for defendant.

In regard to the further controversy between the counsel which appeared after this, even if it be said that it was not invited error, we do not think the judgment should be reversed for it. In the case of *Whaley* v. *Vannata,* 77 Ark. 238, the record shows: ''The defendant objected to the above language and asked that his exceptions be noted of record.'' The court said that ''this shows neither a ruling nor a refusal to rule on the part of the trial judge and brings nothing before us for review.'' ·See also *Fogel* v. *Butler,* 96 Ark. 87'; *Kansas City So. Ry. Co.* v. *Murphy,* 74 Ark. 256.

We have carefully examined the record, and, while it may be stated that it may appear to us that the preponderance of the evidence shows that the plaintiff was right in the amount of land that was overflowed and the crops destroyed thereby, still this was a question of fact which was settled by the verdict of the jury and can not be disturbed by us on appeal. We find no prejudicial errors in the record, and the judgment will be affirmed.